IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 2:15cr118 |
| v. ) | |
| ) | |
| PIETER HUNG REIDY, ) | |
| ) | |
| Defendant. ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, Andrew Bosse, Assistant United States Attorney, and John F. Butler, Special Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines range to be a term of 46 to 57 months' imprisonment on Count 1, based on a Total Offense Level of 23 and a Criminal History Category of I. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The government does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation.

By counsel, the defendant has objected to the application of U.S.S.G. § 2K2.1(a)(3), which sets a base offense level of 22 for the defendant's crime of conviction. (PSR ¶ 18.) The government responds to this objection in Section III below. If the objection remains pending at sentencing, the government will present evidence that the high-capacity magazines were

1

recovered in close proximity to the rifles. The advisory guidelines range calculation will change if the objection is sustained.

For the reasons outlined below, the United States respectfully submits that a sentence at the low end of the guidelines range is appropriate in this case and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

**I.     Motion**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The government notes that the additional one-level reduction already has been incorporated into the Total Offense Level calculated in the PSR.

**II.    Background**

On September 16, 2015, the grand jury returned an indictment charging the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Docket No. 3. The charge stems from the recovery of eight semi-automatic assault rifles from the defendant's storage unit and one semi-automatic handgun from the defendant's residence. The defendant was previously convicted in federal court, in Philadelphia, of conspiracy to possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846, and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). (PSR ¶ 31; *see* Crim. Case No. 2:04cr267, Docket No. 14 (E.D. Pa.).)

On December 30, 2015, the defendant pleaded guilty pursuant to a written plea agreement. Docket Nos. 26-31. On December 31, this Court entered a consent order of forfeiture through which the defendant agreed to forfeit all nine firearms and the ammunition recovered at the storage locker. Docket No. 25. The defendant is scheduled to appear before this Court for sentencing at 11:00 a.m. on Tuesday, May 10, 2015.

### III. Outstanding Objection – Enhancement for Possessing Semi-Automatic Firearms Capable of Accepting a Large Capacity Magazine

The defendant has one outstanding objection to the PSR. In calculating the base offense level, the probation officer looked to U.S.S.G. § 2K2.1(a)(3)(A)(i), which provides that an offense involving possession of firearms by a convicted felon has a base offense level of 22 if the offense (i) involved semi-automatic firearms capable of accepting a large capacity magazine and (ii) the defendant possessed the weapons after a felony conviction for a crime of violence or controlled substance offense. (PSR ¶ 18.)

Application note 2 to U.S.S.G. § 2K2.1 explains that a semi-automatic firearm capable of accepting a large capacity magazine means "a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm."

The defendant questions only whether the numerous large capacity magazines recovered from the same storage unit as the semiautomatic rifles were in "close proximity" to the rifles.

All eight semi-automatic rifles were capable of accepting large-capacity magazines. Police recovered approximately two dozen large-capacity magazines from the same 9x14 foot storage unit as the eight rifles.

3

In *United States v. Mudlock*, the Fourth Circuit held that the sentencing court did not err in finding that the enhancement for possessing a firearm capable of accepting a large capacity magazine was properly applied when the large capacity magazine was inside a drawer approximately six to 10 feet from the rifle. 483 F. App'x 823, 829 (4th Cir. 2012) (per curiam).

Here, more magazines were in even closer proximity to more weapons than in the *Mudrock* case. If that is not "close proximity," then subpart (B) of the definition would be nearly superfluous. The base offense level was properly calculated.

## IV. Position on Sentencing and Argument

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

The government respectfully submits that a sentence at the low end of the guidelines range is appropriate and reasonable in light of the Section 3553(a) factors.

A) <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense are straightforward. The defendant is a federal felon—a convicted drug dealer. He was not allowed to possess any firearm, and he knew that. The defendant successfully petitioned the governor for the restoration of his civil rights, thereby regaining the right to vote, hold public office, and serve on a jury, among other valuable rights. The letter informing him that his civil rights had been restored specifically stated that his rights to ship, transport, possess or receive firearms were *not* restored.

The defendant nevertheless made the conscious decision to break the law by getting a gun. He did not go halfway—this is not the case of someone who was caught keeping a revolver for home protection or hiding a hunting rifle in the garage. In addition to keeping a loaded 9mm semi-automatic handgun with a laser sight at his residence, the defendant amassed a mini-arsenal of military-style semi-automatic rifles, numerous high-capacity magazines, ammunition by the case- and box-load, 10 containers of gun powder, scopes and sights, and several folding bipods. (PSR ¶¶ 8-11.) He did not hide the fact that he used guns—he was captured on video shooting at a local gun range. (PSR ¶ 6, SOF ¶ 3.)

In passing § 922(g) and setting significant penalties for its violation, Congress made clear that the possession of weapons by convicted felons is a serious crime. That is so whether or not the individual presently intended to do violence; the law preemptively takes the major tool of violence in this country out of the hands of those who have chosen to commit felonies. While the law applies to all felonies, the penalty structure under the Sentencing Guidelines recognizes that its enforcement is particularly important in the case of individuals who have committed crimes of violence or drug crimes, as this defendant did. *See* U.S.S.G. § 2K2.1(a) (setting elevated offense levels for felons with prior crimes of violence and controlled substances

offenses). The defendant is responsible for the choices he has made in life. First, he chose to deal drugs. In doing so, he took the risk that he would be caught and would suffer the penalties associated with that choice, including the loss of the right to possess guns. Then, he chose to possess not just one but many guns, many high-capacity magazines, and cases of ammunition.

  B)  <u>History and Characteristics of the Defendant</u>

The defendant, unlike many individuals who come before the Court for committing firearms violations, was raised in a strong and intact two-parent home. He had a privileged upbringing in a wealthy household, graduated from college, and worked for a local charity in which his parents are heavily involved. (PSR ¶¶ 38, 52.) He is a member of various social and country clubs and supports a number of local charities. (PSR ¶ 39.) He works as a real estate developer and investor, and also has vast private assets. (PSR ¶¶ 54, 58.) Mr. Reidy is the rare defendant capable of paying both a fine and the costs of his imprisonment. He deserves credit for overcoming a medical condition so severe that doctors initially were not sure he would be able to walk. (PSR ¶¶ 44-48.) The Court has received dozens of letters from friends of the defendant and the defendant's parents. Those individuals who actually know the defendant personally speak well of his character.

That said, the defendant already has one serious federal felony conviction on his record. He was convicted, while still a student at Drexel University, of conspiring to possess with intent to distribute hundreds of pills of oxycodone, and of possessing with intent to distribute marijuana. (PSR ¶ 31, Case No. 2:04cr267 (E.D. Pa.).) This was not a youthful offense—the defendant was 25 years old when he was caught. The oxycodone that was the object of the conspiracy is a highly addictive narcotic painkiller, and the defendant chose to sell it to others even after knowing firsthand the toll that addiction to oxycodone can take. (PSR ¶ 50.) In

addition to dealing that drug, the defendant was not a small-time pot dealer. Police found 13 kilograms of marijuana in the back of his car. (PSR ¶ 31.) According to the sentencing position paper in that case, the defendant spoke to the government pursuant to a proffer, but the government did not find him credible regarding the circumstances of the crimes:

> He refused to tell the government where he obtained the large quantity of marijuana that was in his car, and he refused to assist the government in identifying other individuals with whom he was involved. It is certainly any defendant's right to refuse to cooperate in other investigations. However, it is disingenuous to claim that by admitting the crime for which he was caught redhanded, Reidy has somehow 'detailed his criminal activities.' For these reasons, the defendant did not receive a cooperation plea agreement with the government.

Case No. 2:04cr267, Docket No. 14, at 11-12. The government noted that the Philadelphia offense was ongoing and that "over time Reidy distributed a large amount of drugs." *Id.* at 13. It requested a sentence at the top of the sentencing guidelines range. *Id.* The defendant received no jail time at all. (PSR ¶ 31.) Because of that, he was assigned no criminal history category points for his previous conviction in the PSR. The government believes that Criminal History Category I understates the significance of the defendant's criminal history.

The defendant managed to escape a single day of jail for his first federal felony. The deterrent effect appears to have been as expected. For some defendants convicted of the same gun offense, the crime of possessing a firearm after a felony conviction is one of desperation or perceived necessity. For this defendant, it is a crime of entitlement. He decided he would do what he wanted to do. Just as with the drug crime, he regrets in hindsight—after he was caught—the decision he made.

The government notes that he has declined to cooperate in this case as well.

7

C) <u>Other Factors to be Considered Under 18 U.S.C. § 3553(a)</u>

In the abstract, the defendant's significant private assets and strong family support are two factors that argue against the chance of future recidivism. But that would ignore the fact that he is already a recidivist. This is the defendant's second federal felony—he now has both drug and gun convictions. The guidelines range correctly reflects the seriousness of the crime. That said, the government believes that the low end of the guidelines range would set an appropriate sentence here.

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the seriousness of the defendant's offense, to afford adequate specific deterrence to future criminal conduct, and to promote respect for the law.

**V.    Conclusion**

Taking all the Section 3553(a) factors into account, the government respectfully submits that a sentence of 46 months' imprisonment is appropriate and not greater than necessary.

        Respectfully submitted,

        Dana J. Boente
        United States Attorney

By:    /s/
        Andrew Bosse
        Assistant United States Attorney
        John F. Butler
        Special Assistant United States Attorney
        Attorneys for the United States
        United States Attorney's Office
        101 West Main Street, Suite 8000
        Norfolk, VA 23510
        Office Number: 757-441-6331
        Facsimile Number: 757-441-6689
        andrew.bosse@usdoj.gov/john.f.butler@usdoj.gov

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 3rd day of May, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record, including:

>James O. Broccoletti, Esq.
>Zoby, Broccoletti & Normile, P.C.
>6663 Stoney Point South
>Norfolk, Virginia 23502
>Phone: (757) 466-0750
>Fax: (757) 466-5026
>
>Richard Habib Doummar, Esq.
>Doummar & O'Brien,
>1397 Laskin Road
>Virginia Beach, Virginia 23451
>Phone: (757) 422-0061
>Fax: (757) 422-5512
>
>*Attorneys for Defendant Pieter Hung Reidy*

  I HEREBY CERTIFY that on this 3rd day of May, 2015, I sent by electronic mail a true and correct copy of the foregoing to the following:

>Anita G. Powell
>U.S. Probation Officer
>827 Diligence Drive, Suite 210
>Newport News, Virginia 23606

> /s/
>Andrew Bosse
>Assistant United States Attorney
>Attorney for the United States
>United States Attorney's Office
>101 West Main Street, Suite 8000
>Norfolk, VA 23510
>Office Number: 757-441-6331
>Facsimile Number: 757-441-6689
>andrew.bosse@usdoj.gov